IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

EARLINE PUGH, o/b/o R.P., :
 :
    Plaintiff, :
 :
vs. :
 : CIVIL ACTION 13-0465-M
CAROLYN W. COLVIN, :
Social Security Commissioner, :
 :
    Defendant. :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff[1] seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income for children (hereinafter *SSI*) (Docs. 1, 16). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 21). Oral argument was waived in this action (Doc. 22). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be

---

[1] The Court notes that this action was brought by Earline Pugh on behalf of her adolescent son. Nevertheless, the Court will refer to the child as the Plaintiff.

1

**REMANDED** for further administrative procedures not inconsistent with the Orders of the Court.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative hearing, Plaintiff was fifteen years old and had completed an eighth-grade education (Tr. 32). In claiming benefits, Plaintiff alleges disability due to bronchitis, asthma, and impaired intellectual functioning (Doc. 15).

The Plaintiff filed an application for SSI on September 18, 2006 (Tr. 141-47; *see* Tr. 15). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) (Tr. 55-64); the Appeals Council, however, remanded the action back for further consideration (Tr. 65-68). Following a second evidentiary hearing, the ALJ determined that Pugh was not disabled as he had no severe impairments (Tr. 10-23). Following a request for

review of the hearing decision (Tr. 212-15), the Appeals Council denied review of the hearing decision (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Pugh alleges that: (1) The ALJ did not properly assess the conclusions of two examining psychologists; (2) the ALJ improperly determined that he did not meet Listing requirements; and (3) the ALJ improperly discounted Plaintiff's testimony (Doc. 16). Defendant has responded to—and denies—these claims (Doc. 17). The relevant evidence of record follows.

On December 5, 2006, Psychologist Nina E. Tocci examined the eleven-year-old Pugh whose mother reported that he was enrolled in special education classes in the fifth grade (Tr. 251-54). Plaintiff was oriented to time, place, and person; he demonstrated fair attention and scattered concentration. "He was able to recite the alphabet, the days of the week, the months of the year, and count to 25;" he demonstrated a good fund of information and comprehension (Tr. 252). Pugh's ability to abstract was intact; he demonstrated thought content appropriate to mood and circumstances and a goal-directed thought organization. Plaintiff demonstrated some insight into his behavior. Tocci thought that he was functioning within the average range of intellectual ability and diagnosed him to have Adjustment Disorder with disturbance of mood and conduct. The

Psychologist noted that Pugh had some issues surrounding the death of his older brother years earlier; Plaintiff had witnessed the brother get hit and killed by a truck and still suffered visual hallucinations of his brother.

On July 30, 2008, Psychologist Donald W. Blanton examined Pugh; in the Fall to come, Plaintiff was to start seventh grade in special education classes (Tr. 360-64). Thoughts and conversation were logical and associations were intact; affect was flat but appropriate. No confusion was noted; his mood was depressed. Pugh was alert; insight was limited and judgment was considered fair. Persistence and concentration were adequate for testing. The WISC-IV was administered and Plaintiff scored a verbal comprehension of 67, a perceptual reasoning of 61, a working memory of 74, a processing speed of 70, and a full scale IQ score of 60; these scores placed Pugh in the mild range of mental retardation. Blanton expressed the opinion that this was a valid assessment of his level of intellectual functioning, noting that there were no distractions and Plaintiff appeared to put forth good effort. The Psychologist diagnosed post-traumatic stress disorder with depression and behavior problems, related to Pugh's witnessing his brother's death. Blanton estimated that Plaintiff had a Global Assessment of Functioning (hereinafter

*GAF*) score of 50.[2]  The Psychologist completed a Broad Functional Limitations form in which he indicated that Pugh had extreme limitations in his ability to acquire and use information, marked limitations in attending and completing tasks and in interacting and relating with others, and less than marked limitation in his ability to care for himself; there were no limitations in Plaintiff's ability to move about and manipulate objects.

On August 10, 2010, Psychologist Tocci again examined Pugh who was in the ninth grade in a regular school curriculum with resources classes in math and reading (Tr. 323-26).  Plaintiff's affect was appropriate, normal, and stable; he was oriented to person, place, and time.  Attention and concentration were distracted; he recited the alphabet, but only with difficulty and the need to sing it.  Pugh demonstrated a good fund of information and comprehension; his ability to abstract was impaired.  Plaintiff demonstrated thought content appropriate to mood and circumstances and a logical thought organization; he had no insight into his behavior, but evinced fair social judgment. Tocci noted that he appeared to be functioning within the borderline range of ability.  The Psychologist administered the WISC-IV on which Pugh scored a verbal IQ of 59, a perceptual reasoning IQ score of 75, a working memory IQ score of 52, a

---

[2]A GAF score between 51-60 indicates "moderate symptoms or moderate difficulty in social, occupational or school functioning." *See* https://depts.washington.edu/Resources/ CGAS/GAF%20Index.htm

5

processing speed IQ score of 53, and a full scale IQ score of 52. Tocci stated that although the scores would indicate that Plaintiff was mentally retarded, the scores were invalid as his effort was poor and he was not motived to participate; she indicated that his prognosis was fair. The Psychologist's impression was that Pugh was malingering and suggested that his GAF Score was 75.[3]

On November 30, 2010, Neuropsychologist John R. Goff examined Plaintiff (Tr. 365-72). Goff noted that he had been provided evidence by the Office of Disability Adjudication and Review and by Pugh's attorney; he reviewed those records within the body of his report. Plaintiff's Mother reported that although he had undergone special education courses in the past, they were not available in high school. A test for dissimulation suggested that Plaintiff gave a straightforward performance in his testing. Goff noted that Pugh's memory was somewhat questionable. He was oriented to time, place, and person and could recite the alphabet; logical memory for verbal material was poor. The Neuropsychologist saw no clinical indications for malingering or dissimulation. On the WISC-IV, Pugh obtained a full scale score of 54, which Goff thought was "spuriously low;"

---

[3] A score between 71 and 80 indicates that "[i]f symptoms are present they are transient and expectable reactions to psychosocial stresses; no more than slight impairment in social, occupational, or school functioning." See https://depts.washington.edu/Resources/CGAS/GAF%20Index.htm

he indicated that the General Ability Index, on which Plaintiff scored a 58, was a better estimate of his abilities (Tr. 368). It was noted that "[t]he working memory and process speed scores [were] very low and the process speed score in particular [was] affected by a rather ponderous approach to the test" (*id.*); the scores were in the upper end of the mildly retarded range of intelligence.  Pugh also took the WRAT-IV, obtaining standard scores of 83, 87, and 89 for the Word Reading, Spelling and Math Computation scores, corresponding to the beginning fourth-grade, mid-fifth grade, and mid-third grade levels, respectively.  Goff found no thought or mood disorder.  The Examiner found that Pugh was mentally retarded, as supported by Blanton's previous testing, the tests he had given, and his academic performance; he noted that Plaintiff was functionally illiterate.  Goff said that he did not know "where the PTSD comes from" as he saw no signs of anxiety (Tr. 369).  The Neuropsychologist's diagnosis was that Pugh suffered from a mathematics disorder and mild mental retardation.  Goff completed a Broad Functional Limitations Form on which he indicated that Plaintiff had marked-to-extreme limitation in acquiring and using information, marked limitation in attending and completing tasks,[4] marked limitation in

---

[4]The ALJ found that Goff marked both "No limitation" and "Marked limitation" for this domain (Tr. 22).  The Court cannot say that that interpretation is wrong though it seems obvious that the "Marked limitation" is what was intended (Tr. 371).

7

interacting and relating with others, and less than marked limitation in caring for himself and in his health and physical well-being (Tr. 371-72).

At the first evidentiary hearing, Plaintiff's mother testified that her son had just been socially promoted to the seventh grade and was in the special education curriculum (Tr. 43-49). Pugh gave his mother, teachers, and other students a hard time; the Mother thought his behavior was related to having witnessed his brother get killed when run over by a truck. Plaintiff had a hard time with asthma and took medication for it; he had to be on the breathing machine four times a day. He had to have a breathing treatment in the middle of the night about three times a week. Pugh could not participate in P.E. at school because of the asthma.

At the second—and most recent—evidentiary hearing, the Mother testified that her son was in the ninth grade and not doing very well with his schoolwork; his school did not offer special education classes, though he had been in that curriculum previously (Tr. 31-35). Plaintiff did very poorly in math. Pugh did not have friends and tended to stay to himself; he had to use a nebulizer machine four times a day because of his bronchitis.

Also at the second hearing, Dr. William Jeansomme testified as a Medical Expert, saying that he had studied the record evidence and heard the testimony from Pugh's Mother (Tr. 35-39).

8

It was the Doctor's opinion that Pugh did not "satisfy the criteria for disability described in the disability evaluation manual" (Tr. 36-37). Jeansomme stated that he was not a psychologist or psychometrist. This concludes the relevant evidence of record.

In bringing this action, Plaintiff claims that the ALJ did not properly assess the conclusions of two examining psychologists. Pugh specifically refers to the reports of Blanton and Goff (Doc. 16, pp. 5-6). It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[5] *see also* 20 C.F.R. § 404.1527 (2013). The ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

In his determination, the ALJ made the following specific determinations as to what weight he would give the evidence:

> The undersigned assigns significant

---

[5]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

9

> weight to the opinion of William Jeansomme,
> Ph.D., M.E., who opined claimant has minimal
> asthmatic and bronchitis and claimant does
> not have a significant mental impairment.
> The undersigned finds the opinion of Nina
> Tocci, Ph.D., who diagnosed claimant as
> malingering with a guarded prognosis of 75.
> The undersigned rejects the opinion of Dr.
> Blanton who diagnosed claimant with Post-
> Traumatic Stress Disorder and gave claimant
> the necessary functional limitations to
> satisfy the "B" criteria for that disorder.
> Claimant witnessed his brother's death,
> which Dr. Blanton, rates as meeting Post-
> Traumatic Stress disorder some six years
> after the event.  The undersigned rejects he
> opinion of Dr. Goff, who parroted the
> evidence from the CD's provided to him by
> the attorney, and finally came up with the
> diagnosis of Math Disorder.  However, the
> undersigned rejects the opinion of Dr. Goff,
> who in the Functional Limitations marked two
> separate limitations for claimant in the
> Domain of Attending and Completing of no
> limitation and a marked limitation, which is
> enough to reject his opinion.  Moreover, Dr.
> Goff has had the benefit of two CD's with
> all the evidence and, yet, he could not
> understand why claimant was diagnosed with
> posttraumatic stress disorder although the
> mother of claimant had told claimant
> experienced something in his life that was
> quite devastating.

(Tr. 22).

The Court has read this passage multiple times and determined that the ALJ has failed to adequately explain how he reached his decision.  In his determination, the ALJ simultaneously rejects Blanton's opinion for diagnosing PTSD while rejecting Goff's opinion for not diagnosing it.  Though he

10

"found" Tocci's report, the ALJ did not state what he thought of it.  These assessments eliminate the opinions of all of the examining physicians, leaving only the opinion of a non-examining OB-GYN doctor (Tr. 357-59), characterized as having only a Ph.D. by the ALJ (Tr. 22), to provide an opinion on a fifteen-year-old with claimed impairments of bronchitis, asthma, and impaired intellectual functioning.

The ALJ's evaluation is far from adequate.  While the Government has made strong arguments explaining why the ALJ's conclusions are correct, they do not stand in the shoes of the ALJ and get the opportunity to come into Court and cleanse the poorly written opinion (Doc. 17).  This is not just a matter of the ALJ's decision needing to be "more clearly worded and [needing] additional proofreading and spelling," as acknowledged by the Government (Doc. 17, p. 5); this decision fails to explain the evidence on which he relied and how the decision was reached.

The Court does not indicate by its decision today that the ALJ's conclusions are wrong.  They may be correct, but until the ALJ explains his reasoning, the Court must reach the decision that the conclusions are not supported by substantial evidence.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence.  Therefore, it is **ORDERED** that the action be **REVERSED** and

**REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for the gathering of evidence relevant to Pugh's impairments.  Judgment will be entered by separate Order.

DONE this 30th day of April, 2014.

                                        s/BERT W. MILLING, JR.
                                        UNITED STATES MAGISTRATE JUDGE